IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JANNE TUOMAS KYTTANEN,                                    Case No. 6:26-cr-00528-MC

        Petitioner,                                                ORDER

   v.

LAURA ELIZABETH KYTTANEN,

        Respondent.

_____

MCSHANE, Judge:

Petitioner JANNE TUOMAS KYTTANEN brings this action under the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention") and the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001–11, against Respondent LAURA ELIZABETH KYTTANEN. Pet., ECF No. 1. On March 19, 2026, Petitioner filed Motion for Temporary Restraining Order *Ne Exeat* without notice to Respondent. Mot., ECF No. 4. For the reasons set forth below, the Motion (ECF No. 4) is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

According to the Petition and Petitioner's Motion for Temporary Restraining Order *Ne Exeat* (Mot. ECF No. 4), Petitioner was born in Finland and has permanent residency in The Netherlands. Pet. ¶ 5. Respondent is a citizen of the United States and also has permanent

1 – ORDER

residency in The Netherlands. *Id.* ¶¶ 6, 8. Petitioner and Respondent were married in October, 2015. *Id.* ¶ 7. The parties have two minor children, ATK, age 9, was born in 2016 in the United States, and REK, age 6, was born in 2019, in the United States.[1] *Id.* ¶ 9. ATK and REK are dual citizens of Finland and the United States. *Id.* Petitioner alleges he, Respondent, and their minor children resided in The Netherlands since April 7, 2020. *Id.* ¶¶ 13–14. ATK and REK were "habitually resident" in The Netherlands since on or around April 24, 2020 under Article 3 of the Convention up until the date of their alleged removal and retention by Respondent. *Id.* ¶ 12. ATK and REK received their primary medical care in The Netherlands, having health insurance through The Netherland's public health insurance system, prior to their wrongful retention. *Id.* ¶ 27.

The parties are now divorced "as ratified by the Netherlands divorce Judgment and Parenting Plan" and "share joint parental authority and shared parenting time." Pet. ¶ 11.

Petitioner alleges Respondent wrongfully removed ATK and REK from The Netherlands and wrongfully retained them in Oregon as of March 11, 2026. Pet. ¶ 10. Petitioner states that on March 1, 2026, Respondent sent an email to Petitioner that Respondent had decided to return to the United States. *Id.* ¶ 16. On March 2, 2026, Respondent sent an email canceling a tour scheduled for March 3, 2026, for a potential school option in the Netherlands for ATK. *Id.* On the same day, Petitioner wrote an email to Respondent stating that he did not give permission to Respondent to leave The Netherlands with ATK and REK. *Id.* ¶ 17. Respondent did not respond. *Id.* On March 3, 2026, Petitioner attempted to alert the police and the airport that Respondent could possibly be attempting to leave The Netherlands. *Id.* ¶ 18. Petitioner's counsel reached out

---

[1] As ATK and REK are minors, they are identified only by initials.

2 – ORDER

to Respondent's counsel on March 4, 2026 only to hear from Respondent's counsel she longer represented Respondent. *Id.* ¶¶ 19–20.

When Petitioner "went to check on ATK and REK" on March 12, 2026, he found "the house was empty." Pet. ¶ 21. Petitioner received an email from Respondent stating that it was "time for a holiday and she was unsure when she and [ATK and REK] would return" and expressing "she wanted no contact." *Id.* ¶ 22. Petitioner did not agree to Respondent's removal and retention of ATK and REK to the United States. *Id.* ¶¶ 28–29, 32. Petitioner believes Respondent is wrongfully retaining ATK and REK at a residence located at or around 63154 NW Vista Meadow Lane in Bend, Oregon. *Id.* ¶¶ 23–25; Mot. 2. Neither Respondent nor the parities' children have returned to The Netherlands as of the date of the Petition. Pet. ¶ 30, 33.

The Petition before this court, filed on March 18, 2026, alleges wrongful detention of Child, in violation of the Convention and 22 U.S.C. §§ 9001, et seq. On March 19, 2026, Petitioner filed an *ex parte* motion for a Temporary Restraining Order ("TRO"), requesting the Court issue an order granting the following relief (Mot. 3):

1. Restricting the removal of the minor children, ATK and REK, from the State of Oregon during the pendency of these proceedings;

2. Requiring Respondent to relinquish her own passport(s) and the passport(s) of ATK ,and REK to the custody of the Court for the pendency of these proceedings;

3. Placing ATK and REK in the physical care and custody of Petitioner while these proceedings are pending; and

4. Requiring an expedited consolidated hearing on the Petition and for a preliminary injunction to occur no later than six (6) weeks after the service of process in this matter.

5. Requiring no bond for the requested TRO.

3 – ORDER

## LEGAL STANDARD

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). The moving party bears the burden of persuasion and must make a clear showing that he is entitled to such relief. *Winter*, 555 U.S. at 22. Where the "balance of hardships tips sharply towards the [moving party]," the moving party need only show "serious questions going to the merits," rather than likelihood of success on the merits, to warrant preliminary injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quotation marks and citation omitted).

## DISCUSSION

I.      **Notice to Respondent**

Upon an *ex parte* request for a TRO, that is "without written or oral notice to the adverse party or its attorney," the Court may grant the TRO (Fed. R. Civ. P. 65(b)(1)):

> [O]nly if specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

4 – ORDER

Based on Petitioner's allegations introduced above and the findings to follow below, the Court finds relief without notice to Respondent is necessary to avoid immediate and irreparable injury, loss, and/or damage if notice of the proceedings was given prior to this Order. As required, Petitioner's counsel has properly certified to the Court the reasons why notice should not be required. ECF No. 4-2.

## II. *Winter* Factors

### A. Likelihood of Success on the Merits

Adopted on October 25, 1980, the Hague Convention on the Civil Aspects of International Child Abduction, 19 I.L.M. 1501, is an international treaty establishing procedures for "the prompt return of children wrongfully removed or retained in any Contracting State." Convention, Art. 1(a), 19 I.L.M. at 1501. Congress enacted the International Child Abduction Remedies Act, 24 U.S.C. §§ 11601-11610 to implement the Convention. 24 U.S.C. § 11601(b). The Netherlands and the United States are both signatories to the Convention.

The Convention aims to discourage forum shopping in international custody disputes. *Holder v. Holder*, 392 F.3d 1009, 1013 (9th Cir. 2004). The role of the court applying the Convention is solely to determine the rights available under the Convention, as opposed to the merits of the underlying child custody claim. *Id.* at 1013–14; § 11601(b)(4). In other words, the court does not "determine whether a child is happy where it currently is, but whether one parent is seeking unilaterally to alter the status quo with regard to the primary locus of the child's life." *Mozes v. Mozes*, 239 F.3d 1067, 1079 (9th Cir. 2001).

The Convention only requires the return of a child whose removal or retention was "wrongful":

The removal or the retention is to be considered wrongful where –

5 – ORDER

a) it is in breach of rights of custody attributed to a person . . . under the law of the state in which the child was habitually resident immediately before the removal or retention; and
b) at the time of removal or retention those rights were actually exercised, . . . or would have been so exercised but for the removal or retention.

Convention, Art. 3, 19 I.L.M. at 1501; *see also Abbott v. Abbott*, 560 U.S. 1, 9 (2010).

In determining whether the removal or retention was "wrongful" under the Convention, courts answer four questions:

(1) When did the removal or retention at issue take place? (2) Immediately prior to the removal or retention, in which state was the child habitually resident? (3) Did the removal or retention breach the rights of custody attributed to the petitioner under the law of the habitual residence? (4) Was the petitioner exercising those rights at the time of the removal or retention?

*Mozes*, 239 F.3d at 1070. The petitioner must establish that the removal or retention was "wrongful" by a preponderance of the evidence. § 11603(e)(1)(A).

Based on preliminary information before the Court, Petitioner has sufficiently established a likelihood of success on the merits. Petitioner asserts he has joint custody rights under the law of The Netherlands. Mot. 2.; Pet. Ex. 1, ECF No. 1-3 ("Parenting Plan" establishing "Joint Exercise of Parental Authority" and "Care Arrangement" with joint custody procedures). Respondent did not consent to Respondent indefinitely removed ATK and REK from The Netherlands and the parties' Parenting Plan also provides the "[parties] will stay with the children in the Netherlands, unless agreed otherwise in mutual consultation." Pet. Ex. 1, at 1. Further, Petitioner has sufficiently alleged ATK and REK's habitual residence as of March 11, 2026 was The Netherlands. Pet. ¶¶ 16, 22, 27, 30; *Monasky v. Taglieri*, 589 U.S. 68, 79–80 (2020) (holding a "child's habitual residence depends on the particular circumstances of each case" and "[t]here are no categorical requirements for establishing a child's habitual residence"). Though there are exceptions under which the Court need not order return,

6 – ORDER

Respondent has not appeared to reveal or support any such exceptions. *See Gaudin v. Remis*, 415 F.3d 1028, 1034–35 (9th Cir. 2005); 22 U.S.C. § 9003(e)(2).

## B. Likelihood of Irreparable Harm to Petitioner

A parent's interest in raising their child is paramount, and any unlawful denial of that interest is a grave harm. Congress has explicitly found that "[t]he international abduction or wrongful retention of children is harmful to their well-being." 22 U.S.C. § 9001(a)(1). Congress has authorized Courts to "take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition." 22 U.S.C. § 9004(a). Considering the allegation that Respondent has already removed ATK and REK from The Netherlands without notifying Petitioner and contrary to alleged schooling plans, there is a real risk that Respondent may leave this jurisdiction with ATK and REK. *See Wahlfeld v. Wahlfeld*, 2025 WL 296796, at *4 (W.D. Wash. Jan. 24, 2025); *Cocom v. Timofeev*, 2018 WL 3958129, at *4 (D.S.C. Aug. 17, 2018). Thus, Petitioner has sufficiently demonstrated a likelihood of irreparable harm if the court does not grant the TRO.

## C. Balance of Equities

Respondent's harm will be minimal if the Court grants the TRO. Petitioner does not request the Court grant him permanent custody. Rather, having convincingly pleaded ATK and REK were wrongfully removed from The Netherlands, Petitioner asks the Court to prevent Respondent from leaving Oregon with ATK and REK and order Respondent to appear at further proceedings that will allow the Court to determine whether ATK and REK should be returned to The Netherlands. Mot. 8. Respondent's custody rights will be unaffected by the Court's Order on the Motion. *See Abbott*, 560 U.S. at 20 ("Ordering a return remedy does not alter the existing

7 – ORDER

allocation of custody rights, but does allow the courts of the home country to decide what is in the child's best interests. It is the Convention's premise that courts in contracting states will make this determination in a responsible manner." (citations omitted)). Further the Court denies in part the Motion to the extent Petitioner requests the Court grant him custody during this litigation. Thus, the Court finds that any threatened harm to Respondent is minimal as compared to the risk of irreparable harm to Petitioner, ATK, and REK.

### D. Public Interest

It is in the public's interest that the United States participate in the Convention to ensure the safe return of children to their home countries. For the reasons discussed, the Court concludes the balance of the equities and the public interest also support granting Petitioner a TRO. *See, e.g.*, *Soberano v. Guillen*, 2021 WL 4804605, at *6 (W.D. Wash. Oct. 14, 2021). The current record indicates Respondent has wrongfully removed and retained ATK and REK in violation of Petitioner's custody rights.

## III.    Excusal of Bond Requirement

The Court exercises its discretion to excuse the bond requirement of Fed. R. Civ. P. 65(c) to issue the TRO here. *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999). Petitioner is not required to post a bond or security for this Order due to the nature of the conduct to be temporarily enjoined. Respondent is unlikely to suffer any costs or damages in the event the Court determines that she was wrongfully restrained. *See Jorgensen v. Cassiday*, 320 F.3d 906, 919–20 (9th Cir. 2003).

8 – ORDER

## CONCLUSION

Petitioner's Motion for Temporary Restraining Order *Ne Exeat* (ECF No. 4) is GRANTED IN PART and DENIED IN PART. A combined hearing on the merits and, to the extent it is needed, a preliminary injunction hearing on April 28, 2026, at 1:30 PM in courtroom 2 of the Eugene federal courthouse.  The Court will hold a status conference on March 30, 2026, at 11:00 AM via video conference.

The Court ORDERS the following:

1. Respondent LAURA ELIZABETH KYTTANEN shall not remove ATK or REK (the "Children") from the State of Oregon or from the jurisdiction of this Court for any purpose or reason without 72 hours prior written approval from the Court. Respondent shall immediately notify Petitioner JANNE TUOMAS KYTTANEN and the Court if she changes or alters her current residence or the current residence of the Children during the pendency of this action.

2. Respondent shall not assist or permit any third parties or persons, whether acting on her direction or authority or not, from removing or assisting in removing the Children from Oregon or from the jurisdiction of the Court. Likewise, third parties and persons shall not remove the Children from Oregon or from the jurisdiction of the Court.

3. Respondent LAURA ELIZABETH KYTTANEN shall surrender any and all of her passports and the passports of ATK and REK—including Finnish and American passports—to the United States Marshals Service ("USMS") immediately upon service of the foregoing documents.

4. The USMS is directed to seize any and all passports of Respondent LAURA ELIZABETH KYTTANEN and of the Children, and deliver the passports to the Clerk of

9 – ORDER

Court of the United States District Court of the District of Oregon, Eugene Division. If the aforementioned individuals do not voluntarily provide the passports to the USMS upon its request, the USMS is authorized to use reasonable force to seize the passports. The USMS is authorized to enter private property, if necessary, to effect this seizure. The USMS is authorized to arrest and/or employ reasonable force against any individual who impedes or attempts to impede its seizure of the passports.

5. The Court DENIES Petitioner's request the Court order ATK and REK be placed in the physical care and custody of Petitioner during the pendency of this action. Until a hearing can be held, ATK and REK shall continue to reside with Respondent, subject to the conditions set forth in this Order, and Respondent shall receive 50% parenting time, including overnight visits, assuming Petitioner is in Central Oregon or nearby. The parties shall IMMEDIATELY CONFER on this issue and present the Court with a parenting plan consistent with this Order.

RESPONDENT LAURA ELIZABETH KYTTANEN'S FAILURE TO COMPLY WITH THIS ORDER WILL RESULT IN CONTEMPT PROCEEDINGS. 18 U.S.C. § 401 (providing a federal court "shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command").

IT IS SO ORDERED.

DATED this 20th day of March 2026.

_____/s/ Michael McShane_____
Michael McShane
United States District Judge

10 – ORDER